Jacob Markowitz, J.
This is a motion to dismiss the complaint on the ground that the agreement alleged therein is void under the Statute of Frauds and a cross motion to dismiss the defenses raised in the answer.
It is alleged herein that some time in December, 1964 the individual defendant hired plaintiff for the purpose of arranging necessary introductions with a view towards the purchase by the former of a stock interest in the United Whalen Corp. The purported “finder’s fee” for such arrangement was 5% of the purchase price. Ultimately the individual defendant and his corporate nominees acquired 20% of the United Whalen outstanding stock. Admittedly, the transaction sued upon was oral.
The appropriate statute declares an oral agreement to be void and unenforcible if it is one “to pay compensation for services rendered * ‘ * in negotiating the purchase, sale, exchange * * * of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest” (General Obligations Law, § 5-701, subd. 10).
Involved herein is a sale of less than a majority of the stock. It is clear, however, that this constituted a controlling interest in United Whalen. It is contended by plaintiff that this transaction is outside the Statute of Frauds since only majority stock sales are mentioned in the statute. It is also asserted by plaintiff that even if negotiations to capture control of a corporation through purchase of less than a majority of the stock were within the Statute of Frauds, an issue is raised herein as to *857 whether a controlling interest was involved. Certainly if such an issue existed, it might be advisable to try that issue preliminarily to either a ruling on the motions in main, or if that issue is so extensively intertwined with the other issues in the case, at the trial itself. Plaintiff’s attempt to raise the issue on this motion, however, has the ring of afterthought, since the documentary proof offered herein as well as plaintiff’s testimony in pretrial depositions clearly indicates that corporate domination was the bartered commodity.
The statute involved herein was adopted in the context of growing ‘ ‘ claims for commissions for services rendered in the sale of a going business or a business opportunity” and based on a legislative finding that the nature of finder’s fee contracts is such that “in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted, and employers often seek to escape liability by denying the fact of employment” (N. Y. State Legis. Annual, 1949, p. 19). In recommending the legislative change, the Law Revision Commission indicated its applicability to all sales of a business opportunity, business or fractional interest therein (1949 Report of N. Y. Law Rev. Comm., p. 615). It further added: “ The proposal hereafter made makes it clear that a transfer of an interest in a business through the creation of a partnership or the sale of a majority of the voting stock interest in a corporation is included” (id.). It would thus appear that the clarifying language incorporated in the statute is illustrative rather than restrictive, and that utilization of the majority stock transfer as an example did not per se exclude minority stock transfers provided they otherwise fall within the purview of the term business opportunity or interest therein. It is obvious from the statutory scheme that writings were to be required to evidence finders’ commissions in business and business opportunity transfers including interests therein. It is also apparent that the drafters of the legislation intended that the legislation be applicable not only to transactions involving the transfer of business assets but also, in appropriate cases, to stock transfers. While transfer of the majority of the voting stock of a corporation must always be deemed transfer of a business opportunity, the converse is not true, since, conceivably, transfer of a minority interest in a corporation would afford the recipient no opportunity to engage in the business pursuits of the corporation. However, where, as here, the transfer of the minority interest is coupled with other circumstances so as to clothe the purchaser with the right to dictate the business policies of the corporation, it exceeds the realm of simple investment and becomes a transfer *858 of a business or business opportunity within the meaning of the statute.
In reaching this conclusion, the court is aware of the dictum in Cohon & Co. v. Pennsylvania Coal & Coke Corp. (10 A D 2d 667), wherein the court stated that the Statute of Frauds was inapplicable to the agreement there in suit since less than a majority of the voting stock of the corporation was involved. That statement, however, was made purely in observation and was, in effect, an advisory ruling for an anticipated new trial. In this regard, it does not have the force or persuasion of stare decisis.
It is the opinion of this court that the distinction between transfers of minority interests in a corporation for investment purposes and similar transfers for pursuit of a business venture made in Sorge v. Nott (34 Misc 2d 545), so as to place the former outside and the latter within the Statute of Frauds, is the one intended by the Legislature and should have judicial sanction.
Accordingly, the motion is granted as prayed for, and the cross motion is denied as academic.